is it must that the claim phrase an entire body of an operator includes the operator's hands and arms. This concession is all that is required to reverse the injunction. As the district court accepted the undisputed fact that the accused platform does not support the rider's hands and arms, thus the injunction. The patent itself in column two, line 37, I'll give you a second to get there, talks about how the steering controls may be mounted on the suspended platform, implying they don't have to be, but then more importantly, a little bit lower at line 51, the patent says the operator platform supports an entire body of the operator. Now there's no doubt from the picture the operator platform is 70, which includes the mechanism for the footrest and the base that the chair would sit on, but the operator platform does not include in any drawn embodiment or at any disclosure in the specification, the operator platform does not include the steering controls. In fact, the steering controls have both a separate number and at column two, right after that sentence where it says the operator platform supports an entire body of the operator, it says the steering controls of the vehicle are connected to the operator platform. So steering controls are clearly, in light of this patent, delineated as a separate element, separate from the platform, and the platform itself is the thing that supports the entire body of the operator, as disclosed throughout this patent. So why then is it your view that the steering controls must be construed as part of the operator platform, directly contrary to the teaching of the specification? Sure, so there's two points in response to that. One is the, I agree with you that the operator platform and the steering controls are separate, much like the seat is separate or the footrests are separate. All those are separate elements that are pieces that would be manufactured on. But as it relates to the question that this court has to decide today, what is the construction of an entire body of an operator? The only thing that this court needs to decide is, does that include the hands and arms? And the parties agree that... No, I think that the patent tells us what supports an entire body, the operator platform, despite the fact, I mean, I'm not construing the words entire body in a vacuum. I'm construing them in light of their utilization in this specification. And this specification says the entire body of the operator is supported by the platform, which, by the way, doesn't even include the seat itself. So when this patent talks about an entire body being supported, every time in this specification it says the entire body is supported by the platform. And the operator platform doesn't even include the seat, much less the steering controls. So why aren't I construing what the claims mean when it says something that will support an entire body by reference to the same words being used in the spec in multiple places? Sure, and there's a lot of very good questions, and I'll start with the question of construing support. Obviously, the district court didn't construe the term support below. The claim construction dispute between the parties below was, what does an entire body of an operator mean? Totrell argued that it had to include the hands and arms. Where did the district court say an entire body doesn't include the hands and arms? The district court's construction of a person having ordinary skill in the art would understand the entire body limitation in reference to how a person sits in an ordinary chair is an adoption of Skagg's arguments that the entire body... I don't see where the district court said an entire body doesn't include hands and arms. The district court's construction had to mean that because the district court made a factual finding. The platform does not support the rider's hands and arms. Wasn't that in the section of its opinion where it was It is not. The district court, in that passage, and I'll take you there now, it says it on APPX 10. So it starts, Skagg argues, that is a statement of an argument. In opposition, the defendants focus, that is a statement of the argument. Then the court says a statement of undisputed fact. All of the accused mowers have steering controls connected to the chassis, not the suspended operator platform. Every other sentence in that paragraph is repeating what somebody's Absolutely, agree. And the sentence after that does the same thing. And the next paragraph down starts, Skagg counters. Does your whole argument rest on me interpreting the district court's opinion this way? No, but I firmly believe it's true because then the court goes on in the next paragraph, Skagg counters. Fair enough, that's an argument. But then it starts to state the law that it's applying, still in that paragraph, while construction may not part of the limitations. Now it's talking about the law. So the court certainly makes... Well, when you're talking about the law, it's going to apply, right? Which is not uncommon. In fact, when I write opinions, I often say they argue, they argue, now here's the general law I'm going to apply, then I apply it to the facts of a given case. And you want us to construe that single sentence sandwiched in the middle of the discussion of all the arguments the parties are making before they even get to the general law that applies in the case as nonetheless a fact-finding. That's a very strange structure for an opinion for me to interpret it that way. Well, then even when we go on to where the court's analysis is on APPX 12, the court goes on to say that the fact that the defendant's lawnmowers have steering controls attached to the chassis. So it's referring back to that earlier fact statement that it made. Where is this on page 12? APPX 12. The second, the first, I put it halfway down, accordingly. The court agrees with Skagg that the fact that the defendant's lawnmowers have steering controls. So it's referring back to its previous fact-finding. And the reason that we know... No, it's referring, it's not referring to previous fact-finding, it's referring to, I mean, it's an undisputed fact that the defendant's lawnmowers have steering controls attached to the chassis, isn't it? I mean, I don't understand that to be disputed by either party. It is, it is, I agree with that, it's a distinct... So why would you need to make a fact-finding of an APPX 10, which means that the platform does not support the writer's hands and arms, arms and hands, is a statement of undisputed fact, because the party... Actually, your analysis doesn't make sense, because he says it's not a defense to infringement. If he actually made the fact-finding that you're saying that he made earlier in the opinion when he was repeating everybody's arguments, then his ultimate fact-finding here on page 12 would make no sense. Because he said it doesn't matter. The district court's fact-finding was it doesn't matter if the platform supports the operator's hands and arms, because it supports the torso and the feet. That was exactly... Where does he say it supports the feet, and isn't that inconsistent with the thing you want me to construe as a fact-finding on 12, where the district court says a person having ordinary skill in the art would understand the entire body limitation in reference to how a person sits in an ordinary chair. I've never seen an ordinary chair that has a footrest. Have you? No, I... Your chair doesn't support your feet, right? I'll tell you what, I think the ordinary chair construction has no support anywhere. It came out of thin air. It does not have any support in that patent. The patent doesn't talk about an ordinary chair. It has no support anywhere. And the reality is this isn't a case about an ordinary chair. So, okay, so the ordinary chair has no support. Maybe you actually could garner our agreement with that, but I don't still understand how that gets you to a successful construction, because the district court did look at these very sentences and make the conclusion that this doesn't support the construction that you're seeking, and I don't see how you prevail on that construction given what the patent explicitly says. A follow-up to that is where does the specification say that the controls support the hands and arms? That's a good question. So the entire case is about this mower that supports the hands and arms. It doesn't say supports. It says it dampens or reduces vibrations. It never says that it supports the hands and arms. Well, that is what the invention is about. It's not about... Skagg now argues on appeal that support means weight. Keep in mind that was not an argument made to the district court below. The word weight never showed up in Skagg's briefing, so Skagg wants this court now to say support means weight. But the problem with the prior, it wasn't that it didn't support the operator's weight. It was that it didn't isolate the operator from shock. The claims don't say isolate from shock. They don't. They say support the entire body. But support doesn't mean weight in this patent. It absolutely does not. The word weight was not used by either party before the district court. The parties didn't ask... I thought you said that support was not interpreted. Wait. Skagg did not use the term weight in its briefing before the district court. The parties agreed that support meant isolate before the district court. And this is important, I think. So before the district court, the Skagg responded that it's proposed construction of entire body of the operator, which as I've said, focused solely on support of torso and feet, quote, and this is on page APPX442, quote, harmonizes with the 475 patents distinction over prior art devices featuring a suspension system for a seat, but where the operator's feet are supported by the chassis and thus subject to additional vibration. So both of the parties absolutely agreed before the district court that support meant isolate from shock loads. That's the only way that the district court's opinion makes sense. Because the district court's saying, I get it. The controls are mounted to the platform, not the chassis, which would mean that they are allowing vibrations to go into the operator's arms. I don't care, because the only thing I care about is whether vibrations are going to the torso and to the feet. That's the only way the district court's decision makes any sense. And that's why the district court's finding the platform does not support the rider's hands and arms. Arms and hands didn't matter. The district court wasn't looking for support of hands and arms. It was only looking for support of feet. And again, if, as Skagg argues, support means support the weight. A, there is absolutely no factual evidence in this record that the controls don't support the operator's, the weight of the operator's arms. And in fact, these mowers, these mowers, the way that they work is you push controls forward to move forward. You push controls back to move back. They're like, if you see these people riding them, they're getting a workout from riding these things. It's not touch a button, cross my arms, and wait for something to happen. So if it meant weight, which it does not, then it does support the weight. And there's no evidence in the record that the weight of the arms aren't supported. Again, the only evidence in the record about what the platform does support is this statement from the district court. The platform does not support the rider's hands and arms. There's nothing else in the record. Ms. Huey, you're into your rebuttal time. Would you like to say that? I would. Thank you very much. Let's hear from the opposing counsel. Mr. Griggs. Morning. May it please the court. My name is Michael Griggs. With me are my colleagues Adam Brookman and Sarah Long. We're from the Boyle-Frederickson firm in Milwaukee, Wisconsin. Toro argues that the district court abused its discretion by construing the claim term an operator platform that supports an entire body of the operator as excluding the hands and arms. What's your response to Ms. Huey's argument that support does not mean weight? My response is that the specification uses the word support in many instances. So, for example, the specification describes the chassis as supporting a drivetrain. There is also a description of a frame supporting a mower deck. There is also a description, as Your Honor pointed out, of an operator platform supporting the body of the operator. On the contrary, when you're talking about isolating from vibration, the patent is very clear when it's having conversations about that. And this is also reflected and carried over into the claims themselves. For example, in the claims at issue, for example, claims 11 and 14, there is a claim requirement that the chassis supports a drivetrain. And later in that claim, it says the operator platform supports the entire body of the operator. Now, if you were to accept Torrell's argument that support means isolate, then that interpretation of support as isolating from vibration would also have to carry over to the claim limitation where the chassis is supporting the drivetrain. Now, the patent makes no mention that the drivetrain has to be isolated from vibration with respect to the chassis. Also- Where in the patent is the support language for supporting the chassis? This is in claims 11 and claim 14. And also- I don't see that in claim 11. What am I missing? Give me one second, Your Honor. It says it's the second line, a chassis that supports a drivetrain. No, that's okay. I jumped over strong patents. And that language appears in all the claims that are at issue here, claim 11, 14, and claim 21. And in contrast, for example, if you look at claim 5, it talks about a configuration to reduce transmissions of vibrations between two components. So, the patent is very explicit when it's talking about isolating from vibration, and it also uses the word support in the conventional sense when one component is supporting the weight of another component. So, this patent, the court should not construe support as meaning isolate from vibration. Those are two separate concepts. The patent deals with those two concepts separately, and the claims also delineate between those two concepts. I want to ask you about utility vehicle. That's pretty broad language in claim 14, and then claim 21 says a riding utility vehicle. What's a utility vehicle, and what's a riding utility vehicle? Do they differ at all? A utility vehicle and a riding utility vehicle? Yeah. I would say that the patent describes these vehicles. It does put this into context as a riding lawnmower. But isn't an SUV a utility vehicle? You may consider that, but interpreting a utility vehicle as an SUV, for example, I mean, that is not really how the specification is addressing this. It's a sports utility vehicle. Claims are pretty broad, right? Just directed to a utility vehicle or a driving utility vehicle, a riding utility vehicle. What does riding add? I think riding would be more as you would conventionally see someone on a riding lawnmower, as opposed to sitting in a compartment in a car of a regular vehicle. So it's more a sense of you're riding a bike. You're riding in a car. You're not riding in a riding vehicle. I'd like to ask you about anticipation. The district court's opinion feels a bit cryptic or underdeveloped to me. So what is it that you understand about why he, she, I don't know who it is. Is it a he or a she? He, Judge Randolph. Why did he conclude there's no anticipation? The only sentence is Hendrickson discloses a heavy-duty truck with a driver's compartment, not an operator platform as described by claims 11 and 14. And therefore, it's not an anticipatory reference. Why is the driver compartment not an operator platform? Well, Your Honor, first, to the extent you would characterize the district court's decision as underdeveloped, I would like to point out that Toro's argument was very underdeveloped. They didn't introduce any declarations from either technical experts or fact experts in support of their invalidity arguments. They actually only had about six paragraphs of argument. But getting back to her question. So getting back to her question, I think when you look at the Hendrickson reference, and again, when you're considering what the 475 patent is directed to, the district court found that this driver's compartment for a very heavy-duty vehicle is just not the same as a suspended operator platform. And that was the court's factual finding. Why? I mean, why? I mean, just saying it's not the same, I mean, you're not the same as me, but we're both human beings. What is it about these claims? What element of an operator platform does the driver's box fail to contain? Or why is it different? You can tell me it's his factual finding, but a factual finding that has no basis is not supportable. So tell me what the basis is. Don't just tell me they're different. Tell me why they're different or how they're different. Well, I mean, I can go into the specific claim language.  Yeah, for example. Seems like a good idea. Claim 14, for example. There are requirements with respect to the linkage and how the linkage interacts between the operator platform and the chassis. In Hendrickson, the back... Precisely. Precisely. In Hendrickson... No, not Hendrickson. You just said linkage. I don't even know what the heck you mean by that. Take me to the precise claim element that you're talking about. Sure. Claim 14. Claim 14, a linkage system connecting the front portion of the operator platform to the front portion of the chassis and connecting the rear portion of the operator platform to the rear portion of the chassis. So the linkage must connect the front portion of the operator platform to the front portion of the chassis and the rear portion of the operator platform to the rear portion... This is not what the district court held. The district court didn't hold that there was some deficiency in Hendrickson as to how various elements interact with each other. The district court held, precisely, an operator platform is not a driver's compartment. I agree. That's the district court's holding. Is it your position that because the operator platform is basically one platform, one layer, when you add walls and a ceiling, it's no longer a platform? Is that what you're arguing? Well, again, when you look at the claims, Claim 11 and Claim 14, both relate to how this linkage connects the operator platform to the chassis. Was that argued before the court below? No, I don't believe that we argued the particular linkage configuration below. In particular, also, because... Did you argue about the lack of a seat in Hendrickson below? I would have to check the brief. I don't know that off the top of my head. But at the very least, it's an alternate ground for affirmance now, because Hendrickson is clearly missing a drivetrain, which it doesn't even mention, which is required by all three of the claims here, that is supported by the chassis. And the district court also made findings with respect to... Do you want me to make a fact-finding after a P.I. on scant briefing, when there was no briefing below, and you want me to make a fact-finding as an appellate court, something about a drivetrain and a chassis, on appeal? Well, Your Honor, again, this is Toro's burden. They have to present a substantial question as to the validity of this path, and we don't believe they did that below, and the district court did not either. So we're asking you to affirm the district court's decision. What if we don't agree for some of the claims, but we agree... So we don't agree with the determination that there's not a substantial question for some of the claims, but we agree that there is... We agree with the district court on one of the claims. What happens then? Well, the injunction would remain in force. You only need one infringed valid claim that you're likely to succeed on, combined with the other factors in order to sustain the injunction. Do you have anything else you'd like to add? No, unless the court has any other questions, I'll conclude my argument. Okay, we're good. Thank you very much. Ms. Foote, do you have some rebuttal time left? Thank you, Your Honor. I just want to follow up on this. Support does not mean wait. I think I've already pointed out that's not how the parties argued it below. Nobody talked about wait. The district court's opinion does not refer to wait. It clearly isn't talking about wait. There's no fact-finding that would support wait. And just to remind the court once again, this invention is not about supporting the wait. It's about isolating the operator from those shock loans. You can read the patent. You can read how Skagged Brief talks about the patent. That's what this invention is. And keep in mind, too, that this invention is during use of the machine, which is to say when you're mowing, it is being used. And I also want to remind the court that the district court's statement about the functionality of the mower as not providing support for the operator's hands and arms, that is what the court said. And the court has said that in the Moore case we cite, the court must have meant what it said. I also want to follow up quickly on anticipation. I agree with the court that the anticipation discussion is certainly underdeveloped. I would agree with that. And I want to point out that there's no support in the record for the court's finding. It seems like it's contrary to law to the extent that it's suggesting that the addition of elements would avoid anticipation. What about obviousness in Claim 21? Where in the prior is a mower deck disclosed? That's a good question. Obviously, we have made the position that Hendrickson includes everything. It was a vehicle. The claims are related to vehicles. So Claims 14 and 21 have vehicles. The Claim 21, which includes a mower deck, and it does not, Hendrickson doesn't include a mower deck, but the arguments below were that it would have been obvious to a person of skill in the art who was looking to have a utility vehicle that was a mower, include a mower deck. To add a mower deck to Hendrickson? To add a mower deck to the vehicle, yes. And to follow up again on the court's question about what would happen if the court agrees on some claims but not others, it would be required to vacate and remand the injunction because the question of scope would be important to be decided by the district court. Why? I don't understand. His argument sounded perfectly reasonable to me. An injunction is warranted if any claim of a patent is valid and likely to have been infringed. And if you don't win on 21, why in the world don't we just affirm the injunction? Well, obviously, in our briefing we talked about the problem of the injunction being vague, being overbroad. Yes, but that's a different argument.  So separate from that, the scope of the injunction has to be directed to the claims, and certainly our TORO would be in a position where it could potentially provide machines that would not infringe claims 11 and 14 but would not run afoul of an injunction that was directed only to claim 21. The injunction as it stands now... So your complaint is that the injunction would have to identify which claim? It would have to identify the functionality, certainly. Certainly. Absolutely. Are there no further questions? I do want to make one more point. Going back to the controls, I think the court understands clearly our point is that TORO's controls are mounted to the chassis, like the prior art, not to the platform. I just want to make that clear. I don't know if I might have misspoke at one point. Okay. Thank both counsel for their argument. The case is taken under submission. All rise.